L. W. SCHAFFNER, Appellee, v. CENTRAL BRICK & TILE COMPANY et al., Appellees; E. O. FITZ et al., Appellants.

**SALES: Evidence.** Evidence reviewed, and held insufficient to show a sale of corporate stock.

*Appeal from Webster District Court.*—H. E. FRY, Judge.

NOVEMBER 26, 1920.·

THE plaintiff brought his action upon a promissory note, signed by the Central Brick & Tile Company as maker, and various defendants as indorsers. The Fort Dodge National Bank, a creditor of the principal defendant, intervened in the action by setting up several promissory notes, signed by the same principal maker and indorsed by the various defendants and by the plaintiff, Schaffner. There was a decree awarding

judgment both to the plaintiff and to the intervener against the principal debtor, and fixing the order of liability of the various indorsers. The defendants Farmers' Lumber Company, E. O. Fitz, H. J. Fitz, and E. M. Van Patten have appealed.— *Modified* and *affirmed.*

*Kelleher, Hanson & Mitchell,* for appellants.

*Healy & Faville, Price & Burnquist,* and *Mitchell & Files,* for appellees.

EVANS, J.—The issues made in the court below were very complicated. They are simplified here by the fact that the appeal involves only a part of these issues, and is taken from only a part of the decree. The transactions involved grew out of the operation of the Central Brick & Tile Company, a corporation engaged in the business indicated by its name. It was organized by a group of stockholders whose capital was not commensurate with the requirements of the business and the actual ventures undertaken. Its credit was sustained, from time to time, by the personal indorsement of its stockholders, which resulted in a complication of liability, and in misunderstanding and litigation. For a time, the majority of the stock was controlled by a group known in the record as the "Kalo crowd." Between them and the other stockholders as a group, serious friction had developed. The ownership of the stock of this majority group was all acquired thereafter by Campbell, who was not a previous stockholder, by virtue of a contract whereby he assumed the indebtedness of the corporation, up to a certain limit. At the same time, another contract was entered into with Campbell by the remaining stockholders, whereby they agreed to pay to Campbell a certain amount of money, as an inducement to him to purchase the stock of the "Kalo crowd." Campbell became the president and manager of the corporation, pursuant to his purchase. The Farmers' Lumber Company, the Fitzes, Van Patten, and Schaffner were all existing stockholders. Schaffner loaned money to the corporation to the amount of $4,500, and took the note of the corporation therefor, the same being indorsed and guaranteed by Campbell and E. O. Fitz. His suit was brought

upon such note. Before any answer was filed therein, the intervener filed its petition of intervention, as before stated. One defense set up by the Farmers' Lumber Company and by the Fitzes and Van Patten was that, some time in the year 1917, they had sold all their interest in the stock of the company to Schaffner, and that, in consideration therefor, Schaffner had assumed all their liabilities for the debts of the corporation. They prayed, therefore, that they be absolved from all liability to Schaffner, and that Schaffner be made primarily liable, as between him and them, for the payment of the notes held by the intervener. The controversy on this appeal is narrowed down to two exhibits, known in the record as Exhibit 5 and Exhibit 9.

Exhibit 5 is a promissory note for $1,000, drawn to James Campbell as payee, and signed by Schaffner and E. O. Fitz as purported makers. The same was negotiated by Campbell to the present holder. Confessedly, this was an accommodation note, made for the benefit of Campbell. The decree gave judgment against the two makers, making each liable primarily for one half thereof. The primary liability of Campbell, however, was either overlooked or ignored in the decree. The appellees concede here that Campbell should have been held primarily liable for the debt, and such will be the order here. This concession eliminates controversy over this item.

Exhibit 9 is an alleged copy of the alleged written contract of sale of stock made by the Farmers' Lumber Company and the Fitzes and Van Patten to Schaffner, and is as follows:

"For and in consideration of L. W. Schaffner assuming and agreeing to pay all of the indebtedness of the Central Brick and Tile Company of Fort Dodge, Iowa, and releasing us or securing our release of all the obligations or notes that we have signed as surety for the said Central Brick & Tile Company, we hereby agree to assign to the said L. W. Schaffner all the interests we have in the said Central Brick & Tile Company.

"FARMERS' LUMBER CO.,
      "By E. O. FITZ, Secy.
"E. O. FITZ,
"H. FITZ,
      "By E. O. FITZ."

This alleged contract was not signed by Schaffner. It is contended by Fitz that it was delivered to him and accepted by him. No stock was actually delivered or otherwise transferred to Schaffner. It is contended by Fitz that Schaffner already had the stock in his possession, having received the same for other purposes in some previous transaction. Schaffner denies that he had the possession of any such stock, and denies that he ever had such possession, and denies that he ever had any agreement or understanding with Fitz for the purchase of his stock. The initial negotiations which preceded the drawing of said contract are described by Fitz as follows:

''Campbell came to my office, and told me that he thought he had an opportunity to trade the Central Brick & Tile Company plant for some land near Ledyard, Iowa. He said he wanted to know if the stockholders would be willing to assign their interest in the plant, if he could make the deal. I told him that, so far as the Farmers' Lumber Company, H. S. Fitz, and myself were concerned, that I would take the responsibility of doing so, and that I thought Dr. Van Patten would do the same. He said that one of the stockholders was a brother-in-law of Schaffner, and that it would be better for him to take it up directly. Campbell left, saying he was going to Schaffner's office. Within an hour, Schaffner telephoned that he would like to see me at his office. On arriving, I found Campbell and Schaffner there. The talk was that, if the other stockholders (other than Schaffner and Campbell) would release their interest, that Schaffner would assume the obligations, as they were going to trade the plant for the land. Schaffner wanted to be sure that the interest of the stockholders would be turned over. He said, 'I want to know where I am at. I want something to show for it. I am going up there, and I want to close the deal.' I then asked him what he wanted now. He said he didn't care, just so that he was positive that it was all right to go ahead and close the deal; that he didn't want any come-back on the part of the stockholders when he got home. Fitz then said: 'Shall I make the paper out to you [Schaffner] and Mr. Campbell?' Schaffner replied: 'No, make it out to me alone.' I went back to my office and wrote out Exhibit 9 myself. I then took it to Dr. Van Patten, put it up to him, got his signature to the paper, then returned to my office,

and handed it to Mr. West, and asked him to deliver it to Mr. Schaffner. The shares of stock were already in Mr. Schaffner's possession."

The whole controversy on this appeal turns upon this issue of fact. We shall not go into the details of the evidence. It is flatly contradictory. The initial negotiations, as testified to by Fitz, give unmistakable color to the proposed transaction as a tentative transfer, and not an actual one. Campbell had found a prospective customer, who proposed to buy the stock of the company by paying therefor with land. He wanted Schaffner to take charge of the negotiations, and to go to see the land. The stockholders were all anxious to dispose of the plant. It was essential that they all should agree irrevocably, as between themselves, to a sale, and entrust someone with the full authority to make it. Schaffner did go to see the land, and immediately rejected the proposition made, because of the largely inflated price put upon the land. The trial court found, in effect, that there was no sale of the stock to Schaffner. A careful consideration of the evidence satisfies us that this conclusion should be sustained. The circumstances surrounding the parties in relation to this plant render such a sale highly improbable. The very negotiations initiated by Campbell looked to a sale in block of all the stock, and did not contemplate at all a purchase by one stockholder, for his own benefit, of the stock of the other. The paper was prepared by Fitz in his own office, and not in the presence of either Campbell or Schaffner. The terms incorporated into such written agreement had not been agreed upon by previous negotiations. Such a state of facts is consistent with the theory that the paper was prepared as in the nature of an offer or option or authorization to Schaffner to make the sale upon terms that would secure the specified results. It is not consistent with the theory of a present sale and transfer of the stock to Schaffner.

In respect to this controversy, therefore, the decree of the trial court will be affirmed. In respect to the primary liability of Campbell for the note Exhibit 5, it will be modified. Decree may be entered in this court upon motion of either party.—*Modified and affirmed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.